## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**United States of America,**

                                         **Case No. 2:19-cr-208**

   **v.**

                                         **Judge Michael H. Watson**

**Freeda Flynn,**

           **Defendant.**

### OPINION AND ORDER

Dr. Freeda Flynn ("Defendant") moves for a new trial.  ECF No. 97.  The Government opposes.  ECF No. 98.  For the following reasons, Defendant's motion is **GRANTED**.

### I.  FACTS

Defendant was charged with fifteen counts of unlawfully distributing a controlled substance (the "Controlled Substances Counts") and three counts of health care fraud.  *See* Superseding Indictment, ECF No. 40.  From December 12, 2022, through January 11, 2023, the Court presided over Defendant's trial.[1]  *See* ECF Nos. 68–69, 71, 73–76, 78–80.  Before closing arguments, the Court

---

[1] On the afternoon of December 14, 2022, the Court became aware of concerns that Defendant was not competent to stand trial.  *See* Order, ECF No. 70.  The Court adjourned trial from that afternoon until January 3, 2023, to allow time for Defendant to undergo an independent mental health evaluation.  *Id*.  Before resuming trial, the Court held a competency hearing pursuant to 18 U.S.C. § 4247.  Tr. 377:5–378:11, ECF No. 89.  For the reasons explained at that hearing, the Court found Defendant competent, and trial resumed later that day.  *Id*.

granted Defendant's motion for acquittal as to the health care fraud counts.  Tr.

1339:7–20, ECF No. 94.

During its rebuttal closing argument, the Government made the following

statement (the "Rest Assured Statement"):

> Rest assured, ladies and gentlemen, those 15 prescriptions that
> you're going to consider are not the only prescriptions issued to these
> people.  They're not the only prescriptions that Dr. Thomas found to
> be outside of the usual course of professional practice, and they're
> not the only ones to which the defendant is most likely guilty beyond
> a reasonable doubt.  These are simply the 15 that have been chosen
> and the evidence that's been shown to you to prove that these are
> outside of the usual course of professional practice.

*Id.* at 1416:8–16.

The Court immediately instructed the jury to disregard the Rest Assured

Statement.  *Id.* at 1416:17–18.  Moreover, while the jury was deliberating, the

Court expressed its concern about the Rest Assured Statement and invited

briefing on the same.  Tr. 1457:9–1458:4, ECF No. 95.

The Jury acquitted Defendant as to seven of the Controlled Substances

Counts found her guilty on the other Controlled Substances Counts.  *See* ECF

No. 87.  Defendant now moves for a new trial[2] due to the impropriety of the Rest

Assured Statement and other prosecutorial misconduct.  ECF No. 97.

---

[2] Both the Court and the parties have casually referred to Defendant's request as one
for a "mistrial."  However, because the jury has returned a verdict, the Court construes
Defendant's motion as one for a new trial under Federal Rule of Criminal Procedure 33.
*See United States v. Koubriti*, 435 F. Supp. 2d 666, 673 (E.D. Mich. 2006), *aff'd*, 509
F.3d 746 (6th Cir. 2007) (explaining that a certain doctrine "applies only in cases of
motions for mistrial, not to post-verdict motions for new trial."); *cf. Sanders v. Ford*, No.
3:16-CV-02763, 2017 WL 3888492, at *8 (M.D. Tenn. Sept. 6, 2017) ("A mistrial is

## II.    STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 provides that, upon a defendant's timely motion, a court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Although Rule 33 does not define the "interests of justice," it is "widely agreed" that the standard "allows the grant of a new trial where substantial legal error has occurred."  *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (citing cases).  Prosecutorial misconduct can be the sort of "substantial legal error" that warrants a new trial.  *See United States v. Acosta*, 924 F.3d 288, 298–309 (6th Cir. 2019) (concluding the defendant was entitled to a new trial because of prosecutorial misconduct).

## III.    ANALYSIS[3]

The Court must consider whether a new trial is warranted because of prosecutorial misconduct.  When considering whether conduct by the Government rises to the level of prosecutorial misconduct that requires a new trial, the Court first determines whether the conduct was improper.  *United States v. Trujillo*, 376 F.3d 593, 613 (6th Cir. 2004) (internal quotation marks and citation omitted).  Next, the Court considers whether the conduct was "flagrant."

—————————————

granted in a case in which the jury is discharged without a verdict; a motion for new trial is made after a judgment has been rendered" (quoting and collecting state law).
[3] The parties may notice that much of this Opinion is similar, at times verbatim, to the Court's recent order in *United States v. Romano*, Case No. 2:19-cr-202.  This is neither coincidence nor oversight; it is a result of many of the same types of misconduct occurring in both cases.

*Id.* (internal quotation marks and citation omitted).  In determining whether the conduct was flagrant, the Court considers the following factors:

> 1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused.

*United States v. Francis*, 170 F.3d 546, 549–50 (6th Cir. 1999) (citing cases).  If conduct is both improper and flagrant, a new trial is warranted.  *See Trujillo*, 376 F. 3d at 613 (citation omitted).

When a defendant fails to object to the Government's conduct at trial, the conduct is subject to a more rigorous review than when a defendant does object. *See United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008); *see also United States v. Washam*, No. 1:03CR-43-M, 2007 WL 2253161, at *12 (W.D. Ky. Aug. 1, 2007) (explaining, when considering whether alleged prosecutorial misconduct warrants a new trial that because "defense counsel did not object to the statement, the Court reviews this claim for plain error." (citation omitted)).  In the absence of a defense objection, the Court must not only determine whether the prosecutor's conduct was improper and flagrant but also consider whether an obvious or clear error occurred, whether such error affected the defendant's substantial rights, and whether the "adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 376–77 (internal quotation marks and citations omitted).

With these standards in mind, the Court first analyzes whether the Government's conduct during different phases of the trial was improper. If it was, the Court next analyzes whether the improper conduct was flagrant.

## A.     The Rest Assured Statement

Prosecutors are afforded "wide latitude" during closing arguments. *Henry*, 545 F.3d at 377 (citing cases). Any potentially improper comments must be considered in the "context of the trial as a whole" because "inappropriate comments alone do not justify reversal where the proceedings were otherwise fair." *Id.* at 377 (internal quotation marks and citations omitted). That said, prosecuting attorneys have as much a duty "to refrain from improper methods calculated to produce a wrongful conviction" as they do "to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 (1935). When the Government makes improper statements in closing arguments (as opposed to elsewhere in the trial), there is even greater concern for prejudice because "the jury heard the [improper] comments shortly before deliberations." *Simpson v. Warren*, 475 F. App'x 51, 63 (6th Cir. 2012).

As described above, the Government made the following statement in closing argument:

> Rest assured, ladies and gentlemen, those 15 prescriptions that you're going to consider are not the only prescriptions issued to these people. They're not the only prescriptions that Dr. Thomas found to be outside of the usual course of professional practice, and they're not the only ones to which the defendant is most likely guilty beyond a reasonable doubt. These are simply the 15 that have been chosen

and the evidence that's been shown to you to prove that these are outside of the usual course of professional practice.

*Id.* 1416:8–16.

### a.  Impropriety

As a general rule, it is improper for a prosecutor to discuss uncharged conduct or "other bad acts" during closing argument.  *See, e.g.*, *Cristini v. McKee*, 526 F.3d 888, 899–900 (6th Cir. 2008) ("When a prosecutor dwells on a defendant's bad character to prove that he or she committed the crime charged, we may find prosecutorial misconduct."); *United States v. Foreman*, 199 F. App'x 515, 517 (6th Cir. 2006) (discussing favorably another circuit's rule that "the prosecutor's engaging in a discussion of uncharged crimes [is] wholly inappropriate" (internal quotation marks and citation omitted)).  Said another way, "the government may not rely on prejudicial facts not in evidence when making its closing arguments."  *United States v. Roach*, 502 F.3d 425, 434 (6th Cir. 2007) (citation omitted).  The risk of prejudice to a defendant from discussions of uncharged conduct is highest when the charged and uncharged conduct are "of the same nature."  *United States v. Snyder*, 789 F. App'x 501, 508 (6th Cir. 2019).

The Rest Assured Statement is certainly improper.  With it, the Government expressly told the jury that Defendant is likely guilty of crimes that were not indicted and  for which evidence was not presented.  The Rest Assured Statement also tells the jury that the Government has information not known to

the jury: the evidence from which the Government has concluded that Defendant is guilty of the non-indicted crimes. Finally, the Rest Assured Statement impliedly asks the jury to convict on the charged conduct because Defendant is (according to the Government) guilty of many more crimes. In short, it is a textbook "improper statement."

### b. Flagrancy

The Rest Assured Statement was also flagrant. Consider the four factors for flagrancy:

### i. Mislead the Jury or Prejudice Defendant

The first factor in considering whether improper conduct was flagrant is whether the prosecutor's remarks tended to mislead the jury or prejudice the defendant. Here, the Rest Assured Statement was unquestionably prejudicial to Defendant, especially because the uncharged conduct discussed in the statement was exactly the same as the charged conduct: unlawfully prescribing controlled substances. *See Snyder*, 789 F. App'x at 508.

The Government argues that the Rest Assured Statement did not mislead the jury or prejudice Defendant for three reasons: (A) it was supported by the evidence; (B) it was an invited response; and (C) the Court immediately gave a curative instruction. The Court disagrees with each argument.

A. Supported by the Evidence

The Government first argues the Rest Assured Statement did not mislead the jury because it was supported by evidence. The Government points to one

sentence from its medical opinion witness, Dr. Thomas, in which he testified, "[t]here was a time to stop [prescribing opioids], and it was well before this prescription was written." Resp. 3–4, ECF. No. 98 (quoting Tr. 716:8–9, ECF No. 90). The Government argues that one sentence is evidentiary support for the Rest Assured Statement, rendering it non-misleading. *Id.*

Dr. Thomas's testimony is evidentiary support for an inference that Dr. Thomas believed there were multiple, non-indicted prescriptions that Defendant should not have written. However, his statement does *not* support an inference that Dr. Thomas believed those prescriptions were *unlawful*, especially given Dr. Thomas's other testimony that not all "bad" prescribing amounts to unlawful prescribing. *See* Tr. 678:17–679:6, ECF No. 90. Indeed, the cited sentence gives no indication that Dr. Thomas found any non-indicted prescriptions to be unlawful rather than merely "bad." Accordingly, the Government's argument on this point is unconvincing.

B. Invited Response

The Government next contends the Rest Assured Statement was not prejudicial because it was an invited response. It points to the following statement that Defense counsel made during his closing argument:

> In [Dr. Thomas's] review, he found 15 instances in the treatment files of six patients, which cover 35 years combined of treatment among those six patients, that he determined there was prescriptions that were not for a legitimate medical purpose in the usual course of professional practice.

Tr. 1399:8–12, ECF No. 94.  The Government argues that this was a misstatement of fact: in Dr. Thomas's reports, he opined that for each of the indicted patients, there was a date beyond which *all* prescriptions were without a legitimate medical purpose outside the usual course of professional practice. Resp. 4–5, ECF No. 98 (citing Dr. Thomas's reports, attached to this Opinion and Order as Exhibits A and B).  Thus, the Government argues, it was entitled to "right the scales" and correct Defense counsel's misstatement.

Under the "invited response" doctrine, if a prosecutor's allegedly improper remarks were "'invited,' and did no more than respond substantially [to improper remarks from Defense counsel] in order to 'right the scale,' such comments would not warrant reversing a conviction." *Henry*, 545 F.3d at 381 (quoting *United States v. Young*, 470 U.S. 1, 11–14 (1985)).  However, the Supreme Court has cautioned against turning this doctrine into one in which "two wrongs make a right." *See Young*, 470 U.S. at 11–14.  That is, "courts ought not to be put in the position of weighing which of two inappropriate arguments was the lesser." *Id.*  Rather, the Supreme Court has instructed that defense counsel's conduct is one of the many factors a court should consider in assessing whether a prosecutor's statement, "taken in context, unfairly prejudiced the defendant." *Id.*  With these instructions in mind, the Court considers the Government's "invited response" argument.

The Government is correct that Dr. Thomas concluded in his report that, for each indicted patient, any prescriptions beyond a certain date were without a

legitimate medical purpose outside the usual course of professional practice. *See* Dr. Thomas's Reports, attached to this Opinion and Order as Exhibits. Thus, Defense counsel did misstate Dr. Thomas's conclusions. If the Government had merely corrected the misstatement, the Rest Assured Statement would not necessarily warrant a new trial. *See Henry*, 545 F.3d at 381.

However, the Government went well beyond merely correcting Defense counsel's misstatement. That is, the Government did not say only that Dr. Thomas found other, non-indicted prescriptions were issued without a legitimate medical purpose outside the usual course of professional practice. Instead, it also told the jury that the Government could have indicted on those prescriptions and proved Defendant guilty of the same beyond a reasonable doubt. And, as stated above, it impliedly asks the jury to convict on the indicted counts because of non-indicted conduct. Moreover, nothing in the Rest Assured Statement indicated to the jury that the Government was expressly responding to or correcting Defense counsel's misstatement. *Cf. Young*, 470 U.S. at 17–18 ("Accordingly, we conclude that any potential harm from this remark was mitigated by the jury's understanding that the prosecutor was countering Defense counsel's repeated attacks . . . ."). Thus, the Rest Assured Statement, as a whole, was not an invited response. As such, this argument does not mitigate the prejudice aspect of the flagrancy analysis.

C. Curative Instruction

The Government's final attempt to demonstrate a lack of prejudice is to point to the Court's immediate curative instruction.

Curative instructions can often significantly minimize the prejudice from an improper comment. *See, e.g.*, *Slagle v. Bagley*, 457 F.3d 501, 524 (6th Cir. 2006) (explaining that the trial court's curative instructions "mitigated much of the prejudice" from the prosecutor's improper comments). However, "some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect." *Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974).

Here, the Court gave the following instruction immediately after the Rest Assured Statement was made: "I'm going to strike that last portion of the argument and you're instructed to disregard it." Tr. 1416:17–18, ECF No. 94. On the one hand, the immediacy with which the instruction was given increases the likelihood that the instruction reduced the prejudicial effect of the improper comment. *See United States v. Thompson*, 501 F. App'x 347, 366 (6th Cir. 2012) (determining that a prosecutor's allegedly improper remarks did not warrant a new trial in part because the "court gave a swift curative instruction"). On the other hand, the instruction only referred generally to "that last portion of the argument" instead of specifically referencing the improper conduct, which reduces the instruction's ability to minimize prejudice. *See United States v. Hall*, 979 F.3d 1107, 1120 (6th Cir. 2020) (explaining that "general curative instructions given after closings . . . might not cure" prejudice, and that whether

"the curative instructions single out specific comments made by the prosecution is relevant" (citing cases)). Thus, especially considering the Rest Assured Statement's significant prejudicial nature, the curative instruction failed to sufficiently mitigate the prejudice to Defendant.

In sum, for the reasons explained above, the Rest Assured Statement was egregious and greatly prejudicial. None of the Government's arguments demonstrate the prejudice was sufficiently minimized such that this factor should not weigh in favor of finding the conduct flagrant. For these reasons, the prejudice prong of the flagrancy analysis is met.

### ii.     Remaining factors

The remaining factors also weigh in favor of finding flagrancy.

First, the Rest Assured Statement was not isolated; rather, it was merely the worst statement in the closing argument's long line of improper references to uncharged conduct. The other references to uncharged conduct are discussed below.

Next, the Rest Assured Statement was deliberate. Indeed, because the Court had already repeatedly prohibited evidence of uncharged conduct, it is "hard to believe that the prosecution was unaware" that referencing "character evidence during closing argument was inappropriate." *United States v. Silvestri*, 968 F.2d 1217 (Table), 1992 WL 168832, at *6 (6th Cir. 1992) (Keith, J., concurring).

Finally, the overall strength of the Government's case was weak. Although it was not the only element in dispute, this case essentially rose or fell on the Government's ability to prove Defendant's intent. Whether Defendant knew or intended the indicted prescriptions to be without a legitimate medical purpose outside the usual course of professional practice was central to the convictions. The evidence on that element was circumstantial and required the jury to make significant inferences—sometimes inferences upon inferences—to find that Defendant not only knew what the objective standard was, but also that she knowingly or intentionally deviated from that standard. Accordingly, the strength of the case was weak.

All four factors weigh in favor of flagrancy, and, therefore, the Rest Assured Statement was flagrant.

### c. Defendant's failure to object

Defendant did not object to the Rest Assured Statement, which would generally mean that the Court would have to consider whether an obvious or clear error occurred, whether such error affected Defendant's substantial rights, and whether the "adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Henry*, 545 F. 3d at 376–77 (internal quotation marks and citations omitted).

Here, however, Defendant had no time to object before the Court gave its curative instruction. It is unfair to hold Defendant to the higher standard simply because the Court beat her to the punch.

In any event, a new trial is warranted even under that higher standard. First, for the reasons explained above, the Rest Assured Statement was an obvious error.  Second, the Rest Assured Statement was so prejudicial, for the reasons explained above, that it affected Defendant's substantial rights and "seriously affected the fairness, integrity, or public reputation of the judicial proceedings," especially considering the weak evidence against Defendant. *Henry*, 545 F.3d at 376–77.  As the Sixth Circuit has said, when reviewing for plain error, "even one unfairly prejudicial remark may warrant reversal where the evidence of guilt is not very strong[.]"  *United States v. Acosta*, 924 F.3d 288, 308 (6th Cir. 2019).

Accordingly, a new trial is warranted because the Rest Assured Statement was improper and flagrant, even under the plain error standard.

**B.    Cumulative error**

In the alternative, a new trial is warranted under the cumulative error doctrine.  Under that doctrine, when a defendant shows that the "combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair," he must receive a new trial.  *Trujillo*, 376 F.3d at 614 (citation omitted).  Errors that "might not be so prejudicial as to amount to a deprivation of due process when considered alone . . . may cumulatively produce a trial setting that is fundamentally unfair."  *United States v. Daniels*, 699 F. App'x 469, 475 (6th Cir. 2017) (internal quotation marks and citations omitted).

Here, the Government's improper conduct permeated the trial. Indeed, as discussed below, the conduct began even before trial with ignored deadlines, and then continued throughout the trial with the improper examination of witnesses, the presentation of evidence in blatant violation of Court orders, and the numerous improper statements during closing arguments. Although the Court concludes that many of these errors are independently sufficient grounds to order a new trial, the cumulative effect of the errors unquestionably "produce[d] a trial setting that [was] fundamentally unfair." *Daniels*, 699 F. App'x at 475 (internal quotation marks and citations omitted). Accordingly, a new trial would be warranted based on cumulative error.

### 1. Uncharged Prescription Data

The Government repeatedly sought to introduce evidence of uncharged prescriptions, including witness testimony about Defendant's overall course of prescribing and several data sets from Prescription Drug Monitoring Programs ("PDMP Data," and collective with the witness testimony, the "Uncharged Prescription Data"). The Government moved *in limine* to admit the mixed fact and opinion testimony of DEA Analyst Paul Short ("Analyst Short"). ECF No. 64. The Court reserved ruling on that motion until it could review Analyst Short's qualifications. *Id.* However, the Court informed the Government as follows:

> [E]ven assuming that Analyst Short has the proper qualifications to offer opinion testimony, the Court would limit his opinion testimony to testimony about only the indicted **prescriptions**. To be clear, Analyst Short may *not* discuss all prescriptions for each indicted *patient*.

Rather, he may testify about only the fifteen *prescriptions* listed in Counts 1–15 in the Superseding Indictment.

*Id.* at 7 (emphasis in original).

The Court reiterated its position on Uncharged Prescription Data on multiple occasions. For example, during the direct examination of DEA Investigator William Crawford ("Investigator Crawford"), the Court directed the Government to constrain its prescription data to only the indicted prescriptions. Tr. 89:16–19, ECF No. 87. The next day, the Court again told the Government, "until further notice, I don't want to hear about any prescriptions except the 15 listed in the Superseding Indictment." Tr. 302:2–4, ECF No. 88.

Despite this clear order, the Government presented significant evidence of uncharged prescriptions and referenced uncharged conduct multiple times. As one example, Investigator Crawford testified about the "red flags" he saw in Defendant's prescribing practices across her practice. *See, e.g.*, Tr. 88:9–89:1, ECF No. 87. Similarly, Pharmacist Amanda Perkins ("Pharmacist Perkins") repeatedly testified about her overall experience with Defendant's prescribing and her overall concerns with the same. *See, e.g.*, Tr. 323:8–11; 323:23–324:5; 324:9–18, ECF No. 88.

Most concerning, however, was the Government's introduction of the entire PDMP for each of the Indicted Patients and of Defendant's entire prescribing history, including many patients not listed in the indictment. *See* Exhibits 201, 203–211, 214–16. Just one of these exhibits, Exhibit 214, includes nearly 1700

prescriptions, all of which were written well after any of the indicted prescriptions. The Government sought permission to admit Exhibit 214 moments after a sidebar discussion in which the Court again questioned whether the Exhibit showed only the indicted prescriptions or also other prescriptions.  Tr. 89:16–91:6, ECF No. 87.  In that sidebar conversation, the Government represented that the Exhibit contained nothing more than the top line of a PDMD and that the Exhibit was being offered simply to acquaint the jury with what a PDMP looked like.  *Id*. at 89:20–22 ("Your Honor, I'm not going to actually even show anything more than the top line here, just so the jury can be -- can have some idea.").  At that point, the Government also represented that it would not necessarily seek to send the entire Exhibit back to the jury.  *Id*. at 90:21–25.  Yet, when the time came to send the exhibits to the jury, the entirety of Exhibit 214 went to the jury without any request that the Government be allowed to show more than the top line.  *Id*.; Tr. 1441:6–1449:5, ECF No. 94.  During deliberations, the jury informed the Court that at least some PDMP digital exhibits would not allow the jury to see more than the first line, and the jury requested assistance in viewing the remainder of the PDMP data.  *See* Tr. 1441:6–1449:5, ECF No. 94.  The Court raised the issue with counsel, and the Government argued that the jury should have access to all of the PDMP Exhibits because those Exhibits had already been admitted into evidence.  *See, e.g.*, Tr. 1442:20–1444:4, ECF No. 94.  The Court granted the Government's request on its assurance that the exhibits the jury wanted to open had already been admitted into evidence, not realizing that

the jury would see the entirety of, *inter alia*, Exhibit 214—for which the Government sought to publish only the top line.

The Government's presentation of the Uncharged Prescription Data throughout trial was improper. If for no other reason, the presentation was improper because it expressly violated the Court's instructions. *See Trujillo*, 376 F.3d at 613–14 (concluding that the prosecution's reference to certain facts was improper because "it violated the district court's pre-trial order"). The PDMP exhibits were offered into evidence moments after the Court instructed the Government to present evidence of only the indicted prescriptions and were admitted without clarifying to the Court that they included the very type of uncharged conduct just prohibited.

The Government argues that the use of the PDMP exhibits and other Uncharged Prescription Data evidence was proper because, *inter alia*, the PDMP exhibits were joint exhibits and because the Government "made every effort to abide by" the Court's rulings. First, as just explained, the presentation of Uncharged Prescription Data was improper because the *Court* excluded it; it matters not that it was offered as a joint exhibit. Second, as also just described, the Government's "every effort" to follow Court orders included significant misrepresentations to the Court about what the PDMP exhibits contained. Indeed, the Court's admission of the exhibits was, at least in part, based on those misrepresentations. Even assuming such misrepresentations were the result of

carelessness rather than malice, the Government cannot now rest on rulings stemming from those misrepresentations.

Further, the improper admission of evidence was flagrant. First, the evidence was prejudicial and had a risk of misleading the jury by implying that Defendant engaged in significant uncharged criminal activity. Potential prejudice to Defendant is the very reason the Court excluded such 404(b) evidence in the first place.

For the second factor, the conduct was not isolated; rather, the Government repeatedly brought up large portions of Defendant's prescribing history through both testimony and documentary evidence.

The conduct was not accidental because the Court reiterated its position on excluding evidence of uncharged conduct throughout trial.

Finally, the strength of the Government's case was weak.

Although Defendant did not object to the Uncharged Prescription Data, it is nonetheless grounds for a new trial. First, because the Government presented this evidence in violation of the Court's instructions, it was an obvious error. Second, the Uncharged Prescription Data is so prejudicial that it affected Defendant's substantial rights and "seriously affected the fairness, integrity, or public reputation of the judicial proceedings," especially considering the weak evidence against Defendant. *Henry*, 545 F.3d at 376–77.

Accordingly, the Government's presentation of Uncharged Prescription Data amounts to improper and flagrant conduct that warrants a new trial, even under the plain error standard.

### 2.    Opinion Testimony

The Government improperly elicited opinion testimony on multiple occasions.  Prior to trial, the Government moved *in limine* to admit the mixed fact and opinion testimony of Pharmacist Amanda Perkins ("Pharmacist Perkins").  The Court ruled as follows:

> Brief, explanatory opinion testimony from Pharmacist Perkins is **ADMISSIBLE** to the extent it is related to her fact testimony.  The Government is cautioned, however, not to elicit other opinion testimony from Pharmacist Perkins.

Opinion and Order 8, ECF No. 64.  The Government further moved to admit the mixed fact and opinion testimony of Analyst Short, who ultimately did not testify.  *See* ECF No. 61.  The Government also presented Dr. Stephen Thomas, M.D. as a medical opinion witness.  *See* Joint Pretrial Order 5, ECF No. 66.  The Government did not represent that it intended to call any other opinion witnesses.

During trial, however, the Government's witnesses offered opinion testimony beyond the above-outlined parameters.  For example, Investigator Crawford—whom the Government represented as a purely fact witness—gave opinion testimony about the scheduling of controlled substances, "red flags" for unlawful prescribing, and a play-by-play of Defendant's patient files.  *See, e.g.*, Tr. 72:4–14, 81:17–82:25, 96:11–98:6, ECF No. 87.  In addition, Pharmacist

Perkins offered extensive opinion testimony about opioids and appropriate prescribing of controlled substances, which went well beyond her testimony about the facts of certain indicted prescriptions. *See, e.g.*, Tr. 312:7–23, 324:6–325:6, ECF No. 88. Contemporaneous to both sets of testimony, the Court cautioned the Government that it should refrain from eliciting such opinion testimony, yet the Government continued to do so. *See* 128:17–132:10, ECF No. 87; 326:20–327:10, ECF No. 88.

It was improper for the Government to elicit that opinion testimony. First, the Government failed to follow the Court's pre- and mid-trial instructions, and so the opinions were improper on that ground. *See Trujillo*, 376 F.3d at 613–14. Additionally, the Government's eliciting of opinions from Pharmacist Perkins far exceeded the limits imposed by the Court's Opinion and Order *in limine*, likewise rendering the Government's conduct improper. *Id.*

The improper conduct was also flagrant. The opinion testimony was prejudicial because "jurors are likely to give special weight to expert testimony." *United States v. Deuman*, 892 F. Supp. 2d 881, 885 (W.D. Mich. 2012) (citation omitted). Thus, when the Government calls multiple medical professionals— here, Dr. Thomas and Pharmacist Perkins—to opine on the "dangers" of Defendant's prescribing practices, there is a substantial risk that the jury will

place too much importance on those opinions.[4] When those medical opinions are further bolstered by the opinions of a seasoned law enforcement officer, that risk is compounded.

The Government repeatedly elicited improper opinion testimony, and, therefore, this conduct was not isolated.

The conduct was not accidental because the Court gave multiple instructions and warnings on the topic—including in the middle of the improper testimony—but the Government persisted in asking these questions.

Finally, as stated above, the overall strength of the case against the Defendant was weak.

Defendant objected to at least some of this improper opinion testimony. *See, e.g.*, Tr.130:11–15, ECF No. 87; Tr. 326:20–327:6, ECF No. 88. However, even the un-objected-to opinion testimony outlined above warrants a new trial. First, because the Government once again presented this evidence in violation of the Court's instructions, it was again an obvious error. Second, the presentation of so much opinion testimony affected Defendant's substantial rights and "seriously affected the fairness, integrity, or public reputation of the judicial

---

[4] That is not to say, of course, that there is any *per se* rule against presenting opinion testimony from multiple witnesses in one case, or even for multiple witnesses to opine on the same topic. In some circumstances, such a line-up of opinion witnesses might be appropriate. Here, however, the risks of unfair prejudice, undue delay, and needlessly presenting cumulative evidence substantially outweighed the probative value of the duplicative testimony. *See* Fed. R. Evid. 403.

proceedings," especially considering the weak evidence against Defendant. *Henry*, 545 F.3d at 376–77.

Therefore, the Government's repeated use of opinion testimony was improper and flagrant.  It warrants a new trial even under the plain error standard, to the extent Defendant did not object.

### 3.    Other References to Uncharged Conduct in Closing Argument

As explained above, it is generally inappropriate for the Government to discuss uncharged conduct during closing. *Cristini*, 526 F.3d at 899–900.  The Government's improper references to uncharged conduct did not end with the Rest Assured Statement.  Rather, the Government made the following additional improper references to uncharged conduct during its closing argument "(the Statements"):

> Ladies and gentlemen, there was one person, one person who could help Rachelle Alderman from what was becoming an overwhelming addiction and it was her doctor, the person who was giving her these pills, the person who had been **giving her these pills for years** despite the lack of any effect on her and despite, obviously, clearly **pushing her further and further into addiction**.

Tr. 1341:12–18, ECF No. 94 (emphasis added).

> And yet, ladies and gentlemen, all of, if not all of -- nearly, if not all of the patients we're talking about were **consistently prescribed an opioid and benzodiazepine over years**.

*Id.* at 1354:12–15 (emphasis added).

> Ladies and gentlemen, [R.A.] was on the exact same dose of opioids and other drugs **over the course of years prior to 2017**.

*Id*. at 1361:5–7 (emphasis added).

> A young prodigy as I heard him say -- being referred to yesterday was continuing to receive opioids for a **repeated and consistent period of time.**

*Id.* at 1369:16–18 (emphasis added).

> [Patient] had been prescribed numerous drugs for **a number of years including even a fentanyl patch** that she put on with a piece of duct tape.

*Id.* at 1372:6–8 (emphasis added).

> And she **continues to get these drugs two years after the last prescriptions that I just mentioned** to you in April 13th of 2018.

*Id.* at 1373:24–1374:1 (emphasis added).

The Statements were improper.  Each one expressly or impliedly argues that Defendant was prescribing controlled substances without a legitimate medical purpose outside the usual course of professional practice "for years". This reference to Defendant's prescribing practices "over years" invites the jury to consider not only the prescriptions in the Superseding Indictment but also the overall course of (uncharged) prescribing practices.  It thus uses her alleged guilt on *uncharged* conduct as an argument to find Defendant guilty for the *charged* conduct.  Although many of the comments are vague—*e.g.*, "continue prescribing drugs"—they impart a message that the Government views large portions of Defendant's prescribing history as unlawful.  Those large portions of prescribing, however, are not included in the Superseding Indictment.[5]

_____

[5] Moreover, these comments do not reflect an argument that some non-indicted prescriptions shed light on the unlawfulness of indicted prescriptions.  For example, reference to a non-indicted prescription could be perfectly appropriate if an identical

In addition, this is not a case where a prosecutor's closing argument's references to uncharged conduct are firmly grounded in properly admitted evidence. *United States v. Davidson*, 452 F. App'x 659, 666 (6th Cir. 2011) (explaining that the prosecutor's reference to the defendant's other bad acts "was not improper in that the prosecutor was simply referring to evidence that was properly admitted during trial"). To the contrary, this is the same type of other bad acts evidence the Court voiced concerns about and/or expressly excluded earlier in the trial. *See* Part III.B.1, *supra*. Accordingly, the Statements were improper.

Further, the Statements were flagrant. The Statements were unquestionably prejudicial to Defendant, especially because the uncharged conduct discussed was the same conduct for which Defendant was on trial: unlawfully prescribing controlled substances. *See Snyder*, 789 F. App'x at 508. The Government's failure to distinguish between indicted and non-indicted prescriptions, and its generic references to her "prescribing practices" certainly implied many of the prescriptions she wrote "over the years" were unlawful and that the jury should therefore convict her.

———————————————

indicted prescription was written very shortly after the non-indicted prescription. In that hypothetical, the indicted prescription might be unlawful only because of its close temporal proximity to the non-indicted prescription. In contrast here, the Government did not use its references to uncharged conduct to argue that any particular indicted prescription was unlawful; the Government used these references to uncharged conduct to paint Defendant as a long-time doer of criminal activity

Next, the Statements were far from isolated. As discussed below, the Government improperly presented evidence of uncharged conduct throughout the trial.  Then, it made the Statements throughout its closing.  Moreover, it ended its closing rebuttal with an express statement that Defendant was likely guilty beyond a reasonable doubt for unlawfully prescribing controlled substances beyond the fifteen indicted prescriptions.  The Government's repeated references to uncharged conduct cannot be considered isolated.

Third, the Statements were deliberate, not accidental because.  The Court had already excluded this type of evidence and yet the Government purposefully referenced it.

Finally, as discussed above, the overall strength of the evidence against Defendant was weak.

Although Defendant did not object to the Statements, they are nonetheless grounds for a new trial.  First, for the reasons explained above, the prosecutorial misconduct via the Statements was obvious.  Second, for the same reasons the Statements are flagrant, the Statements are so prejudicial that they affected Defendant's substantial rights.  Moreover, because of the serious possibility that the jury considered uncharged conduct during deliberations, the Statements "seriously affected the fairness, integrity, or public reputation of the judicial proceedings."  This is especially concerning given the weak evidence against Defendant.  *Henry*, 545 F.3d at 376–77; *Acosta*, 924 F.3d at 308.

Accordingly, the Statements were improper and flagrant, and they are grounds for a new trial under the plain error standard.

### 4.    Improper Vouching During Closing Argument

"It is a basic tenet of our judicial system that a prosecutor cannot express his or her own personal beliefs and opinions concerning the credibility of a witness." *United States v. White*, 58 F. App'x 610, 617 (6th Cir. 2003).  Vouching generally involves either "blunt statements" (e.g., "I think the witness was honest") or "comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Id*. (citing cases).  Statements about a witness's credibility, which include phrases like "I suggest," "I submit," or "I believe," can be improper vouching when the effect of the "statements taken together can be reasonably construed to be based on personal belief." *United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir. 1994) (internal quotation marks and citations omitted). Vouching is "inexcusable." *Id*. (internal quotation marks and citations omitted).

The Government made the following statements during closing argument (the "Vouching Statements"):

> We've all discussed all of these.  And even if Dr. Murphy believed that methamphetamine could be prescribed, **which I found to be shocking**, we all know generally what these drugs are.

Tr. 1353:23–1354:1, ECF No. 94 (emphasis added).

> Conversely, you heard Dr. Murphy who agreed with the entirety of the medical explanation of what Dr. Thomas said.  The medical foundation.  And yet, when I presented him with specific evidence

such as urine drug tests, such as the danger of concurrently prescribing two drugs, he simply didn't have **what I would believe to be a sufficient answer** for why he came down on the decision he did.

*Id.* 1362:18–24 (emphasis added).

The Vouching Statements were improper. Both statements reflected the prosecutor's personal beliefs about the credibility of a witness's testimony, which is completely inappropriate. *See Carroll*, 26 F.3d at 1389 (admonishing that "by engaging in [vouching], prosecutors thereby violate their obligation to strive to do justice rather than merely to win").

The Vouching Statements were also flagrant. First, they were prejudicial for all the reasons the Sixth Circuit repeatedly offers against this sort of conduct:

> [S]tatements of personal belief on the part of a prosecutor may have a "devastating impact" on a jury; [ ] these statements may infringe upon the jury's role as factfinder and determiner of guilt or innocence; [ ] they amount to inadmissible and highly prejudicial evidence that is not presented under oath and is not subject to cross-examination; and [ ] permitting such statements would improperly favor better-known or unscrupulous lawyers, and would disfavor counsel who omitted such positive assertions.

*Carroll*, 26 F.3d at 1385 (citation omitted).

As there were at least two Vouching Statements, they cannot have been isolated, but neither were they pervasive, thus rendering the second factor neutral.

Whether the Vouching Statements were deliberate is a close call, but they were not a slip of the tongue, and the Government made no effort to correct them; further, vouching is so vehemently condemned by the courts that this Court

cannot reasonably believe that the Government was unaware of the prejudicial nature of the comments. On the whole, then, the Vouching Statements were deliberate. *See Acosta*, 924 F.3d at 307 (concluding that the prosecutor's improper remarks were not "inadvertent slip[s] of the tongue" where the prosecutor made similar improper comments multiple times).

Finally, the overall strength of the Government's case was weak.

In sum, although the "isolated/pervasive" factor is neutral, the other three factors weigh in favor of flagrancy. Accordingly, the Vouching Statements were flagrant.

Defendant did not object to the Vouching Statements, but they are nonetheless grounds for a new trial under the plain error standard. First, for the reasons explained above, the Vouching Statements were an obvious error. Second, for the reasons outlined by the Sixth Circuit, vouching is so prejudicial that the Vouching Statements affected Defendant's substantial rights and "seriously affected the fairness, integrity, or public reputation of the judicial proceedings," especially considering the weak evidence against Defendant. *Henry*, 545 F.3d at 376–77. Once again, given the overall weakness of the Government's case, the Vouching Statements were improper and flagrant and warrant a new trial, even in the absence of a defense objection.

**5.** **Miscellaneous Issues**

Although not necessarily independent grounds for a new trial, throughout these proceedings the Government displayed a general disrespect for the Court and the truth.

First, deadlines. The Government repeatedly failed to adhere to the Court's deadlines. As but one example, the Government had the audacity to respond to Defendant's motion for a new trial—based on prosecutorial misconduct—weeks late. The Government's response was due February 10, 2023. *See* Tr. 1458:1–2, ECF No. 95. Without leave of Court, the Government filed its tardy response on March 3, 2023—three weeks late. ECF No. 98. Nonetheless, the Court has considered the Government's response.

Next, the Government misstated the facts multiple times throughout trial. For example, during the examination of one of Defendant's former patients, A.S., A.S. testified that certain pharmacies would not fill her prescriptions but that a CVS Pharmacy did fill them. Tr. 605:24–606:15, ECF No. 90. A few moments later, the Government asked, "So you couldn't get these [prescriptions] filled anywhere?" The question misstated the prior testimony that A.S. *did* get those prescriptions filled. *Id.* The Government did not correct this misstatement until the Court asked, "Except CVS, correct?" *Id.*

As another example, consider the testimony of a deceased patient's husband, T.A. During direct examination, T.A. testified that, at one point, he spoke to Defendant about his concerns over his wife's medications. *See* Tr.

40:23–41:15, ECF No. 86. The Government then asked T.A. if Defendant decreased the patient's medication dosages following that call, and T.A. said he did not know one way or the other. *Id*. at 42:15–20. Shortly thereafter, the Government asked, "So we've talked about your conversation and how the prescriptions didn't noticeably decline even after you talked with Dr. Flynn, correct?," which again contradicts the witness's testimony that he did not know whether there was a change, or not, to his wife's medication. *Id*. at 45:18–22

It was, of course, improper for the Government to misstate the facts. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). However, while any misstatement of fact is improper, the Government made only a handful of such misstatements throughout a nearly two-week trial. These sporadic misstatements were isolated. Moreover, Defense counsel's examination of the witnesses with whom the Government misstated the facts minimized any prejudice. Thus, the misstatements are not independent grounds for a new trial; however, these misstatements further highlight the Government's cavalier, win-at-all-costs attitude throughout trial.

## IV.    CONCLUSION

For these reasons, the motion for a new trial is **GRANTED**.  The new trial

will be on only the counts on which the jury found Defendant guilty, as Double

Jeopardy bars retrial on the acquitted counts.[7]  *See Benton v. Maryland*, 395

U.S. 784, 796 (1969) (holding that the Double Jeopardy Clause barred retrial on

acquitted count after the jury returned a split guilty/not guilty verdict); *cf. Tibbs v.*

*Florida*, 457 U.S. 31, 41 (1982) ("A verdict of not guilty, whether rendered by the

jury or directed by the trial judge, absolutely shields the defendant from retrial.").

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[7] Defendant argues that retrial of any counts should be barred because of prosecutorial misconduct.  See ECF No. 97.  In limited circumstances, a mistrial may bar retrial.  *See, e.g.*, *Koubriti*, 435 F. Supp. 2d at 670–75 (discussing the doctrine and citing cases). However, that doctrine does not extend to "to situations involving *post-conviction* motions."  *Id*. (emphasis in original).